Mr. Le is a refugee from Vietnam and was previously a lawful permanent resident. No one here disagrees that Mr. Le is now eligible to apply for cancellation of removal and assigned relief. This is because he no longer has an aggravated felony conviction. Given Mr. Le's new eligibility for relief and considering his severe mental illness, we ask that this court remand proceedings to grant Mr. Le's motion to reopen. His proceedings should be reopened because the BIA erred in at least three ways. First, the BIA erred in concluding that a change in law cannot be the basis for equitable tolling of the statutory deadline for a motion to reopen. Second, the BIA erred in failing to consider record evidence of Mr. Le's mental illness at the time of his 2000 proceedings and how it affected the fundamental fairness of those proceedings. Third, the BIA erred in failing to consider Mr. Le's mental illness during the 90 days after his 2000 removal order. To turn to this first point, the BIA broadly states that a subsequent change in law over 14 years after the issuance of a respondent's final removal order is not a valid basis for equitably tolling the 90 day deadline on a motion to reopen. However, this court and SCOCOP provides that a non-citizen can use a motion to reopen to show that he is newly eligible for relief from deportation. All right, counsel, assume for the minute that I agree with you that we could read the misreading, it's sua exponte authority because of the circumstance change. How do you get around the fact that the IJ found that your client had not demonstrated due diligence, which is a prerequisite for equitable tolling, and that fairly construed the BIA's opinion adopted that finding? So isn't a lack of due diligence itself irrespective of the issue you're discussing more than a sufficient reason to uphold the rejection of the sua exponte reopening? Your Honor, I think in the due diligence analysis by the IJ, the only place in the history of this case where there was any analysis of due diligence, that due diligence analysis failed to consider Mr. This particular circumstances, this court's case law, which, which, which particular circumstances, his severe mental illness. So what exact evidence did you put in before the IJ about the exact effect of the mental illness? I understand that there was testimony that starting in, I believe, 2011, your the disorder. But beyond that, what evidence was there about how that would have affected him and his ability to understand the change in the law or react to it? The IJ said respondent does not state when he first learned about Lopez and Rendon and does not list what efforts he undertook to rectify the issues he now raises with respect to his removal proceedings. So other than providing the diagnosis, the MDD diagnosis, what else was there in the record presented to the IJ? So presented to the IJ was that this diagnosis of major depressive disorder with psychotic features provided a significant impairment to Mr. Liz's daily functioning. So it affects both his ability to work and his ability to maintain employment during the pandemic. His symptoms include depression, insomnia, irritable mood, paranoia, impaired recent memory, an inability to concentrate and a disorientation to time, place and person and an inability to care for himself. So how does but how does that impact the IJ's finding that the that the petitioner, I mean, that your client didn't even state when he first learned about Lopez and Rendon and does what efforts he took to rectify the issues he now raises and thus he didn't act diligently. These symptoms of MDD, how did they address that issue? Just because he has these symptoms, how does that go to exactly what the IJ discussed? So I think his symptoms, his symptoms being so severe that he can't take care of his daily. Where's the where's the where's the evidence of that? Where are the evidence? What's the evidence that the symptoms during this relevant time period were so severe that he couldn't even take it, take care of his daily needs? Where is that in the record? At AR 121, the mental health care provider in their notes provided that he has significant impairment to his life functioning. I don't think that's I don't think that's the same thing. And I don't think that addresses what the IJ said. I understand what you're saying, I just somebody who is unable to able to maintain housing is going to have difficulty in discovering a change in law that's so complex as the case, the issues presented in Rendon. But why? But even if that could be true in certain cases, why wasn't it your burden? Your client's burden to present that evidence specifically to the IJ, as opposed to notes of a mental health provider and a generalized diagnosis from 2011? Why wasn't it your burden in order to demonstrate these extraordinary circumstances and the due diligence to present that kind of specific evidence to the IJ? Your Honor, and we believe that the mental health records of the diagnosis and how that diagnosis impacts his daily functioning is sufficient to demonstrate that he is able to also exercise his rights, exercise his ability to discover that change in case. Ms. Alexander, the IJ found that your client had not acted with due diligence, but do you think the board adopted that finding? I know, Your Honor, the board did not. We're very clear that its decision rested solely on the legal error that a change in law cannot be the basis for tolling the 90-day statutory deadline to file a motion to reopen. And I think even the IJ's decision really focused on that a change in law cannot be the basis for for tolling the 90-day deadline. So really what this court here is looking at is not the due diligence analysis, which is not the final decision by the agency, but the broad finding that a change in law cannot be the basis for tolling the 90-day statutory deadline. Counsel, under our case law, why isn't it enough that the BIA said that your client hasn't demonstrated that his mental incompetence was the reason the motion to reopen was after the deadline had passed and the immigration judge properly declined to equitably toll the deadline by over 18 years and properly denied the motion to reopen as untimely, citing the IJ's decision at 1-3, which is in part where the IJ discusses due diligence? Why, under our case law, isn't that enough to demonstrate that the BIA adopted the IJ's findings on due diligence? I think, Your Honor, it's the board is really substituting its own reasoning. It's providing its own reasoning and saying that a change in law in and of itself is not enough to provide a reason to equitably toll the 90-day deadline. It doesn't get into it all the due diligence analysis by the IJ, and neither the IJ nor the board, in its due diligence consideration, didn't consider any of Mr. Leigh's mental health evidence. So here, really, the ultimate decision before this court is that of the BIA, which implies that a change in law cannot be a basis for tolling the 90-day deadline. I think this court recently in LONA explicitly recognized that a change in law can be the basis for equitably tolling the 90-day deadline. So the board's decision here is really contrary to law, such that it's abused its discretion. Also, the second error that I'd like to discuss in the board's conclusion is that Mr. Leigh presented evidence of his mental illness at the time of his 2000 removal proceedings and during the 90-day statutory period after that. That evidence included that he wrote to the IJ at that time that death was better than deportation to Vietnam. He also wrote to the IJ that he was stressed out and depressed. That evidence is sufficient to raise the IJ's indicia of his incompetence, such that his removal proceedings at that time were fundamentally unfair. I see that my time is about run, and I'll conclude there, Your Honors. All right, thank you. Mr. Laforte, whenever you're ready. May it please the court. Yes, Your Honor. May it please the court. Dietz Laforte on behalf of the respondent. What's really before the court today is whether the petitioner here gets a second chance at cancellation by tolling the unquestionably untimely motion to reopen. As opposing counsel mentioned, this court about six weeks ago in LONA v. Barr provided a published precedential pathway to deciding this case here. The two cases are nearly identical. In LONA, the court was permitted to look at both agency decisions to infer that the board's equitable tolling denial in this particular case implicitly includes the immigration judge's due diligence. What is it in the board's decision that you think implies that lack of diligence was one of the bases on which the board was relying? Well, there's nothing specific in the board's decision. It's linking the variables in the equitable tolling calculation with the precedent set forth by the court in LONA v. Barr. For example, equitable tolling is a two-part equation. The first component is that ERA has to prevent petitioner from filing. I think LONA was pretty clear in that equitable tolling can be a basis. You can use change of law can be a basis of seeking equitable tolling. The court in LONA said that's not prohibited. That's right, but the board here seems to have said just the opposite of that, right? The board said a change in law is not a valid basis for equitable tolling. Do you acknowledge that that part of the board's reasoning is not sustainable after LONA? That's correct. That's correct. But we have to look at equitable tolling as a two-part, as I said, as a two-part equation. The equitable tolling when the change in law is only the first component. The second component is the most important component, and that's due diligence. Right, that may be important. That's a component of it in the abstract, but that is a component of the inquiry. But what I don't see in the board's order is where the board engaged with that component. When I look at the order, I see them resting entirely on the first part, that a change in law isn't enough. So where did they say anything about the due diligence analysis? They didn't say anything about the due diligence analysis, but in light of LONA, that's less important because in LONA, the same exact thing happened. The board just denied it as untimely. The court then looked at both agency decisions cumulatively and said, you know what, the untimeliness finding also implicitly includes the explicit finding that there was no due diligence. The court went one step further and said, you know what, the court has the authority on its own accord to determine whether petitioner had satisfied the due diligence component. That precedent lays out the pathway to deciding this particular case. When we look at it, even if the petitioner here can rely on LONA's precedent and pursue equitable tolling based on a change of law, it doesn't automatically satisfy the due diligence component. And similar to LONA, the board hears, in this particular case, the board's affirmance of the equitable tolling also implicitly includes the IHA's explicit finding of a lack of due diligence. There's no record evidence that the petitioner set forth both in his opening brief and in his reply brief to show what steps he pursued his claim between the Rendon finding in 2014 and the time he filed his motion to reopen in 2018. Furthermore, as the immigration judge laid out, he never actually says when he discovered that the law had changed in his favor. He had multiple opportunities to, in his board brief, in his opening brief, and in his reply brief. Counsel, I want to make sure I understand one of your answers to Judge Miller's question. I read the board decision when it says the immigration judge properly declined to equitably toll the deadline for over 18 years and properly denied the motion to reopen. It's timely, citing pages one through three of the IJ's decision where the IJ discussed due diligence as, to me, enough of a due diligence reference to find that the BIA considered it and did enough to adopt the IJ's finding. Was your answer to Judge Miller's question that you disagreed with my view on that and that you were saying to Judge Miller that you didn't think the BIA did anything in their decision to be read as, in any way, adopting the IJ's due diligence finding? That seemed to me to be what you may have been saying. But I want to make sure that I'm understanding your position correctly. No, I'm sorry, Your Honor. It was the complete opposite. I apologize for the lack of clarity. In the board's decision, the affirmance of the equitable tolling denial also included the due diligence finding. And it doesn't abrogate the petitioner's obligation to set forth some record evidence as the moving party as to which steps he took to satisfy the due diligence component. So to answer the court's question, the board did make a bifurcated finding when it came up with it. With regard to Lana, the court is permitted to look at both agency decisions, as it did in Lana, to determine whether or not both of those components were satisfied. In this particular case, the equitable tolling, the court laid out in Lana on 1231 that a change in law can be a catalyst to seeking remedies for the untimeliness. However, that doesn't address the due diligence component. And what can I ask? Is it your view that, in general, we get to look past what the board... Because it often happens that the IJ gives... Outside of the equitable tolling context, it often happens that the IJ gives a bunch of reasons for a conclusion, and the board talks about only a couple of them. Is it your view that, as a general matter, we always get to look past what the board said, what the IJ said? Or if it's something special about equitable tolling, why is tolling different? I think, Your Honor, it depends on a case-by-case basis. I think Lana... My reading of Lana left the door open. In this particular case, since the two are nearly identical, it's important to keep in mind that equitable tolling has two components to that equation. And in the circumstance where the language of the board has adopted some of the explicit findings of the IJ, it opens the door through Lana to be able to consider both agencies conjunctively. So in this particular case, yes. But as a broad rule, the best I can do is say it depends on the language of the particular case and the bottom line here. Because it's very clear, counsel, that in a number of contexts, like, for example, if the IJ finds four reasons to find a petitioner not credible and the BIA only discusses two of them, we're limited to those two, right? Yes and no. Because, once again, it depends on the language of the board's decision. GU can provide us with guidance of taxing in both agency decisions. You talk about adverse credibility. In that particular example, if you have the IJ makes an adverse credibility finding based on eight inconsistencies and the board affirms the overall adverse credibility finding but goes on to talk about three of them, it goes up to the court and then the court decides that the three might have been trivial. Let's say, for example, as Lana said, and Lana illuminated this in footnote seven, it's pointless to remand it back to the board when it's pretty clear by the record of both agencies' decisions that the board will simply adopt the five additional explicit findings. There is some adverse credibility finding. I grant you there is some language in footnote seven of Lana that supports that view, but how is that consistent with Chenery? I mean, if we don't agree with you, suppose I think that the best reading of the board's decision is that it addressed only the idea that a change in law can't support tolling and that it did not incorporate the diligence finding, how is it consistent with Chenery for us to do anything other than remand? Well, now that's where the intersection comes in with Chenery, your honor. Here, we have to go back and look at the bottom line of what's in front of the court, whether he gets a second chance at cancellation. Now, it's important to keep in mind that he's still removable on the possession of controlled substance charge, but when we look at it at the very end of the day, when we were to remand, there's really two issues that would be in front of the board, due diligence and cancellation. And there's enough language in both the board and the IJ's decision to, as the court said in Lana, to make remand pointless because it's clear that the court, that the, excuse me, the board would likely taxi in the explicit language of the IJ's due diligence finding that the petitioner failed to provide some record evidence of what action he took to pursue his claim between 2014 and 2018 when he filed the motion to remand, and he never actually explicitly says the most important piece of evidence when he found out about the change of law. Now, looking at the cancellation of removal, which is the only relief that he's pursuing right now, it's clear by both the board's language in, on page five of the record and the IJ's language, page 56, that the agency would likely discretionarily deny cancellation because of his lengthy criminal history. That includes 11 arrests, 24 offenses, charged with 24 offenses, three drug possession convictions, two convictions for drug paraphernalia possession, one burglary conviction, one death conviction, one public intoxication conviction, one open container conviction, and several traffic offenses. That is, that's indisputable record evidence. That's a pretty clear indication. So, so, so counsel, you're, you're asking us to read footnotes. If we had to reach it, you're asking us, for example, to, uh, to read footnote two of the, uh, the IJ's decision and then the board's discussion of, uh, of this, uh, to the extent there is one is basically saying that even though they didn't say they would absolutely go on this to, to say, yes, yes, we're going to go on, on this, uh, extensive criminal record if we had to reach it, even though nobody actually said that. In light of, yes, your honor, in light of Lana, the, the, the presidential pathway established in Lana from the, from the court. Yes, your honor. That, uh, it's in the key languages, remand is pointless. As Lana said, when there is a pretty clear indication from the record, how the agency would handle the issues that are before us, the due diligence and ultimately the cancellation. And if we're looking at remanding it back to the, to, to make a decision on cancellation of removal, um, it's, it's, it's clear by both decisions that the agency would likely make a discretionary determination, the likes of which, uh, the court, uh, uh, lacks jurisdiction. When, if, and when we're exactly in the BIA decision is, uh, is this discussion on, uh, the petitioner's criminal record? Page five, your honor. Okay. So page five. It's the last paragraph. You're talking about the last full paragraph where they say, uh, it doesn't manifestly turn because he must demonstrate that he deserves release. And he has a lengthy criminal history dating back to the nineties, but it's a significant adverse factor. Yes, your honor. Okay. Um, looking at the, the, the two going back to, uh, to respond to what opposing counsel said, to make it clear that as a moving party, the movement defines the boundaries of emotional remove and to respond middle, the mental illness in this particular case is not relevant at all. Um, the, the, the, the petitioner, uh, filed the motion to remove based on a change of law, not based on his, on his mental illness. There was no record evidence that there was any mental incapacity prior to 2011. So mental illness is not, not applicable in this particular, in this particular case, your honor, see that my time is up. May I briefly conclude? Yes, briefly. Oh, your honor. There's really two issues before the court. A lot of people are provides that presidential pathway for deciding the case. The court's permitted to infer by looking at both the agency's decisions that the, the, the board, uh, uh, affirm the, the IJs explicit diligence finding a lot of also makes it clear that it's pointless to remand, to deter, to make a determination on cancellation as, uh, it's the, both the board and the IJ has indicated that it would likely discretionarily deny, uh, the, the, the cancellation removal, uh, relief request based on the lengthy criminal history. Thank you. Thank you. Thank you counsel. Uh, Ms. Alexander, uh, when you're ready. Thank you, your honor. First, when the BIA conducts its own review of the evidence, this court review is limited to the BIA's decision, except to the extent that IJ's decision is expressly adopted. Here, the BIA never expressly adopted the IJ's due diligence finding. Thus, the final agency decision on review does not address due diligence. Uh, further, the government discusses, uh, Mr. Leigh's criminal history, which the IJ references. However, in making the discretionary determination for cancellation of removal, there are a number of factors that the BIA and the IJ are required to consider on the matter of CBT. There's nine positive discretionary factors and four negative discretionary factors. Of all of those, the IJ's decision only considered about half a factor in considering Mr. Leigh's criminal history. That decision didn't consider any evidence of rehabilitation where he's, uh, now receiving weekly therapy appointments and monthly psychiatric services and active participates in treatment. It doesn't consider Mr. Leigh's long, uh, lack of criminal, uh, history or lack of any contact with criminal, uh, the criminal justice system over the past 10 years. It doesn't consider his family ties to United States citizens. It does not consider his length of residence in the United States from a young age. So, the remand would be pointless, uh, as the government argues it's not the case where the agency failed to consider important positive discretionary factors in Mr. Leigh's case. The government further provides, argued that mental illness is not an issue of the case. However, there was record evidence before the immigration judge in 2000 of Mr. Leigh's mental illness. He had a letter to the judge stating that he was stressed out and depressed. He, his brother provided that he was stressed out and depressed after the deaths of his youngest brother and his father. And Mr. Leigh himself blamed himself for his youngest brother's death, which was a suicide. I think the oral decision also noted that Mr. Leigh responded to questions about his past convictions somewhat strangely and was smiling and laughing in response to the questions. And that Mr. Leigh was eventually diagnosed with major depressive disorder with psychotic features and the mental health care providers noted that symptoms of his disorder, um, included an inability to care for his basic needs, like maintaining a shelter and maintaining employment. Um, suggest that at the time of his 2000 proceedings, where he was not maintaining employment or could not maintain his own shelter, uh, suggest that his mental health functioning was impacting him at the time of those 2000 proceedings. Um, so his mental illness in these, in those proceedings were at issue. Uh, and this court and SOCOP and also in Stoll v. Brennan provides that mental illness can be the basis for tolling the statutory deadline on a motion to reopen. Uh, so given this, Mr. Leigh's mental health was at issue. Uh, and your honors, I think that is it. And I have nothing further. Thank you. Uh, we thank counsel for their helpful arguments and this case is submitted.
judges: Navarro, Bennett, Miller